SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:23-CR-00061-MO |
| v. | |
| **KELLY KAIGHIN,** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| Defendant. | |

### Introduction

Defendant operated a drug distribution business out of his residence in Salem, Oregon where he sold fentanyl, heroin and cocaine, while also possessing firearms. While the defendant is sixty-four years old and has significant health issues, the defendant has a serious criminal history and was selling large amounts of drugs and earned a lengthy prison sentence. For those reasons, the United States recommends a sentence of fifty-one-months imprisonment followed by five years of supervised release.

**Government's Sentencing Memorandum**                                                              **Page 1**

**Factual Background**

A.     **The Offense Conduct**

In December 2022, local law enforcement and the DEA observed a suspected drug transaction. The customer was interviewed and said the customer purchased the drugs from an older white male who the customer knew as "Kelley Raines." The customer explained the customer purchased drugs inside the defendant's residence and provided Kelley Raines' phone number. Investigators determined "Kelly Raines" to be the defendant. (PSR ¶ 18).

DEA conducted a trash pull of the defendant's trash. They located packaging materials, fentanyl powder, burnt tinfoil pieces and hypodermic needles. (PSR ¶ 20). DEA agents then sought and received a federal search warrant to search the defendant's residence.

On January 18, 2023, investigators saw the defendant drive off from his residence and pulled him over as part of the execution of their search warrant. Agents saw a suspected stock of a firearm in an open bag on the floorboard of the vehicle. The stock of the firearm was actually a carrying case for a Mauser 9mm handgun (see photos below). Agents then searched the defendant's person and located two plastic baggies containing approximately 40 grams of cocaine and 60 grams of fentanyl. (PSR ¶ 21). The agents searched the defendant's vehicle and located even more drugs in a backpack. The backpack contained three plastic and taped bindles containing approximately 3,210 grams of heroin and 180 pills containing fentanyl. (PSR ¶ 22).





The agents then searched the defendant's residence pursuant to the search warrant. In the defendant's garage, in the bottom drawer of a dryer machine, agents located approximately 131 grams of fentanyl pills, 496 grams of a fentanyl analogue and a plastic bag containing unknown gray pills (see photos below). (PSR ¶ 23).

**Government's Sentencing Memorandum**                                           **Page 3**




In the kitchen, agents located drug ledgers. (PSR ¶ 23). The ledgers contained notes on various drug prices, debts and accounting of drug purchases. See example photos below.





**Government's Sentencing Memorandum**                                              **Page 4**

In the defendant's adult daughter's room, agents located three safes containing methamphetamine, mushrooms, fentanyl, Xanax, cocaine a stolen Springfield XDM 922 firearm and $37,691 in United States currency. The evidence regarding whether the defendant possessed the drugs and firearm in his daughter's room is not conclusive. The defendant attempted to take responsibility for at least the firearm seized from his daughter's bedroom, but his adult daughter also tried to claim the firearm was hers. The government questions the veracity of both the defendant and his daughter's statements. Neither the defendant, nor his daughter were charged for the drugs and firearm seized from the daughter's bedroom. (PSR ¶ 24).

The defendant was interviewed and confessed to selling drugs. He admitted that he purchased bulk quantities of drugs on credit and would sell them to pay for the purchase. The defendant was arrested and appeared in federal court on a Complaint.

### B. The Charges and Plea Agreement

The defendant agreed to waive grand jury and proceed on an information. On October 21, 2024, the defendant pled guilty to Count 1 of the Information, which charged Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

### C. Guidelines Computation

The government agrees with the PSR calculation of the base offense level of 32. (USSG § 2D1.1, PSR ¶ 30). The defendant did possess a firearm and receives a two-level increase. (USSG § 2D1.1(b)(1), PSR ¶ 31). Defendant has shown acceptance of responsibility, so a three-level reduction applies, provided he continues to demonstrate acceptance of responsibility. USSG §3E1.1(a), (b) (PSR ¶ 34 – 35). The United States further recommends a two-level

downward variance under 18 U.S.C. § 3553(a) for waiving indictment, his performance on pretrial release and mitigation provided by the defendant.

| Count 1: 21 U.S.C. §§ 841(a)(1), (b)(1)(A)– Possession with Intent to Distribute Methamphetamine | | |
|---|---|---|
| USSG § 2D1.1 | Base Offense Level | 32 |
| USSG § 3E1.1(a), (b) | Acceptance of Responsibility | -3 |
| USSG §2D1.1(b)(1) | Dangerous Weapon | +2 |
| 18 U.S.C. §3553(a) | | -2 |
| | **Adjusted Offense Level** | 29 |

### D.    Criminal History

| Crime | Conviction Date | Jurisdiction | Sentence |
|---|---|---|---|
| Carrying a Concealed Weapon | 12/16/1984 | Marion County, Oregon | Fine |
| Possession of a Controlled Substance | 2/10/1986 | U.S District Court, District Court of Oregon | 15 years prison |
| Assault 2 | 6/28/1988 | Marion County, Oregon | 10 years prison |
| DUII | 3/14/1998 | Marion County, Oregon | 2 days |
| DUII | 3/14/1998 | Marion County, Oregon | 8 days |
| Harassment | 2/3/1998 | Marion County, Oregon | 30 days |
| Felony Assault 4 (DV) | 2/8/1999 | Marion County, Oregon | 24 months prison |
| DUII (felony) | 4/11/2005 | Marion County, Oregon | 36 months prison |
| DWS | 7/15/2011 | Marion County, Oregon | 30 days jail |

| Strangulation | 5/29/2019 | Marion County, Oregon | Probation |

The total criminal history score for the above convictions is one, so the resulting criminal history category is I. (USSG §5A, PSR ¶ 53). However, the defendant's criminal history is not the usual defendant with one criminal history point. He's been sentenced to significant prison sentences in four separate cases that fall outside of the range to be counted under the sentencing guidelines.[1]

The defendant's criminal history lengthy, serious and surrounds drugs and violence. Most concerning was the incident from 1986. The Salem Police executed a no-knock search warrant at his residence looking for evidence of drug distribution. As the officers attempted to enter the residence with a battering ram, the defendant began to shoot at the officers. One officer was shot in the arm and officers returned fire. The defendant was shot in the thigh. During a search of the residence, law enforcement seized twenty-seven firearms, $13,615 in United States currency, twelve ounces of cocaine, twelve hundred valium tablets, and forty pounds of marijuana. (PSR ¶¶ 44-45).

E.    **Pretrial Performance and Health Issues**

The defendant was released into inpatient treatment on April 27, 2023. He successfully completed residential drug treatment at Willamette Family Treatment and continued with his outpatient treatment. (PSR ¶ 16). The defendant did test positive for fentanyl on May 24, 2024. The defendant denied intentionally taking fentanyl and believed he inadvertently mixed-up old medication with his approved new medication. (PSR ¶ 17).

---

[1] While the defendant's criminal history is significant, the government is not seeking an upward departure under USSG § 4A1.3 for a departure due to an inadequate criminal history category. The government does believe this information is important to counter the defendant's proposed sentencing recommendation.

**Government's Sentencing Memorandum** **Page 7**

The defendant has had spinal issues since 2019 and the defendant believes the spinal issues caused him to relapse due to taking pain medications. (PSR ¶ 74). The government did not object to numerous set overs both before the defendant's guilty plea and after to allow the defendant to seek medical help for his health issue. Unfortunately, nothing has resolved. The defendant reported to probation that his doctors believe he will need multiple surgeries and significant recovery. (PSR ¶¶ 75-76). The defendant has not received any surgeries, nor is the government aware of a surgery being scheduled.

### F. Government's Recommended Sentence

The advisory guideline range is sixty-three to seventy-eight months, factoring in the recommended departures. USSG § §2K2.4. While not bound by the Sentencing Guidelines, district courts must consult the guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). The guideline serves as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, 569 U.S. 530, 531 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

The defendant has significant health issues, but the defendant's health is not something new. He had significant health issues when he was running a significant drug trafficking business for years out of his house selling fentanyl, heroin and cocaine all while possessing firearms. Further, this not the defendant's first time being prosecuted for his involvement in drug trafficking. The facts of the 1986 incident are incredibly serious and was not sufficient to keep the defendant away from selling drugs.

The defendant not surprisingly is asking for a significantly reduced sentence given the defendant's age and medical conditions. While the government believes the Court should absolutely consider those factors under 18 U.S.C. § 3553(a), both the defendant's age and medical conditions were around when he was caught selling large amounts of drugs. The defendant's back and spine issue started in September 2019 and it did not prevent him from running his drug business. Thus, a prison sentence is still warranted given his criminal history and the facts of the case. To his credit, the defendant did complete his inpatient treatment and appears to be clean and sober, despite using fentanyl once on pretrial release.

The government does believe a further reduction is appropriate from the defendant's guideline range from sixty-three to seventy-eight months. Therefore, the government recommends a sentence of fifty-one months imprisonment followed by five years of supervised release.

Under the facts of this case, a fifty-one-month sentence, coupled with a five-year term of supervised release, and a $100 special assessment, satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

**Conclusion**

Based on the foregoing, the government recommends a fifty-one-month sentence sentence with five years of supervised release.

Dated: October 1, 2025.            Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Lewis S. Burkhart*
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney